IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CLARENCE LEE, SR. and ANGELIA LEE both individually and as next friends of C.L., a minor | § § § § § | |
| Plaintiff | § | |
| vs. | § | No. 5:08-CV-00531-OLG |
| | § | |
| UNITED STATES OF AMERICA, | § § | |
| | § | |
| Defendant | § | |
| | § | |

**PLAINTIFFS' MOTION FOR JUDGMENT**

The Fifth Circuit vacated the judgment of this Court and remanded for reentry of judgment consistent with its opinion. *Lee v. United States*, No. 13-50905, 2014 WL 4249754 (5th Cir. Aug 28, 2014). Following the Fifth Circuit's mandate, and the case upon which it relied, *Cibula v. United States*, Plaintiffs ask this Court to create two trusts. First, the Court should create a special needs trust to protect C.L's interests (C.L. Special Needs Trust). Second the Court should create a reversionary trust from which periodic payments will be made to effectuate the opinion of the Fifth Circuit.

The creation of these trusts is based on this Court's findings of fact and conclusions of law. Document #111. In it, the Court found that the present value of future medical damages to be $4,863,523. *Id.* at 75. The Court found non-economic damages of $250,000. *Id.* at 77. The total damages in the case totaled $5,113,523. *Id.* at 78. The Court found attorneys fees payable at 25% of the total judgment. *Id.* Taxable court costs totaled $25,229. Document #114. These findings were unchallenged on appeal and are final.

I.      **Legal Standard**

The Fifth Circuit opinion in this case started that the government is not to make payments on an as-incurred basis. *Lee v. United States*, 765 F.3d 521, 529 (5th Cir. 2014). Instead, the district court must order periodic payments "*for at least a portion* of the damages for medical care." *Id.* (emphasis added). And throughout their Fifth Circuit briefing, the United States cited *Cibula v. United States* as authoritative on this matter. 551 F.3d 316 (4th Cir. 2009) (*Cibula I*); 664 F. 3d 428 (4th Cir. 2012) (*Cibula II*); Appellant's Brief, No. 13-50905, at 6 (5th Cir. Dec. 30, 2013). The Fifth Circuit accepted and relied on *Cibula*. *See Lee v. United States*, 765, F.3d 521, 529 (5th Cir. 2014).

Like this case, in *Cibula*, neither party challenged the district court's finding on liability, or the calculation of damages. *Cibula II*, 644 F.3d at 431. The *Cibula* court held that the district court is bound by it's initial finding—unchallenged on appeal—as to the amount of the lump sum. *Id.* at 435. And the *Cibula* court recognized the trial court's inherent authority to fashion a reversionary trust that would pay out periodic payments by, for example, purchasing an annuity or having the trustee invest the corpus and pay out periodic payments to the plaintiff. *Id.* at 435–36.

Like the Plaintiffs' are asking this Court to do, the *Cibula* district court created two trusts: a family trust for upfront payments and medical care; and a reversionary trust to make periodic payments. **Exhibit A**, *Cibula* order, No. 1:05-cv-1386, at 1–3 (E.D. Va.

Jun. 19, 2012) (Document #121).[1] The Texas Periodic Payment statute provides the District Court discretion to award the future damages "in whole *or* in part" in periodic payments. *Id.* § 74.503(a) (emphasis added). A portion of the award for future medical damages should be placed in a reversionary trust that pays out periodically into the special needs trust until C.L.'s death or the depletion of the corpus, whichever occurs first. Should C.L. die before the corpus is depleted, the reversionary trust should have a reversionary interest in the Government's favor.

## II.     Up-front Costs & Fees of Trial

Like *Cibula*, this Court should make an upfront payment. In *Cibula,* the total judgment was for $28,389,289.00. *Cibula*, 664 F.3d at 430. From that judgment, $3,204,800.00 was paid in lump sum to the family directly, after deducting attorney's fees litigation costs, and expenses. The remaining amount, or $25,184,489 for future damages, was placed in two trusts, per a consent order. **Exhibit A**, *Cibula* order, No. 1:05-cv-1386, at 1 (E.D. Va. Jun. 19, 2012) (Document #121). Out of that, $15,430,289 was put into a reversionary trust. *Id.* at 2. $3,645,579 of the future award was placed into a family special needs trust. *Id.* The remainder was paid in attorneys' fees. *Id.*

\*\*\*

---

[1] The *Cibula* order was a consent order filed jointly by the United States and the Plaintiffs. As the Defendant here is the United States, there should be no objection to establishing a payment structure that tracks the one agreed to by the United States in the recent *Cibula* case.

Likewise, this Court should track the *Cibula* court and make the following up-front payments:

| | | |
|---|---|---|
| $ | 1,278,355.75 | attorneys' fees |
| $ | 25,229.00 | court costs, taxable bill of costs |
| $ | 448,304.60 | attorneys' untaxed expenses & costs[2] |
| **$** | **1,751,889.35** | **Total Upfront Costs of Trial** |

## III.   Creation of Reversionary and Special Needs Trust

Plaintiff asks this Court to create a special needs trust for the benefit of the minor C.L. Plaintiff has attached as **Exhibit C** the special needs trust document. Plaintiff also asks this court to create a reversionary trust with a reverter interest in favor of the Government, which is attached as **Exhibit D**, to effectuate this Fifth Circuit's opinion. After deducting for the attorneys fees, taxable costs, and litigation expenses (**$1,751,889.35**), the Court should deposit the remainder of the judgment into the reversionary trust (**$3,386,862.65**).

## IV.   First Periodic Payment from the Reversionary Trust Into the Special Needs Trust

The *Cibula* circuit court opinion made clear that they, "express no view as to how the district court should fashion the trust on remand other than to incorporate a reversionary clause in favor of the Government." *Cibula v. United States*, 664 F.3d 428, 436 n.3 (4th Cir. 2012). Similarly, the Fifth Circuit provides this Court with great discretion on how to fashion the reversionary trust, requiring only that a portion of the

***

[2] Attached as **Exhibit B** is a Declaration Proving up Costs.

future damages be allocated for periodic payments with a reverter to the Government. *Lee*, 765 F.3d at 529.

The first payment from the reversionary trust into the special needs trust should occur on the day of the judgment and should encapsulate non-economic damages and future care payments from the date of trial to present.

Under the Texas Periodic Payment structure, the Court has complete discretion to order future damages other than future medical damages in lump sum. Tex. Civ. Prac. & Rem. Code § 74.503(b) ("the court may…"). Therefore, Plaintiff requests C.L.'s non-economic damages in the amount of **$250,000** be awarded as the initial payment into the special needs trust on the date of the judgment.

The *Cibula* court also awarded the initial up-front payment to represent the net future care payments from 2007 (date of the *Cibula* trial) to 2011 (date of *Cibula* judgment). **Exhibit A,** at 2. Similarly, this Court should make an initial up-front payment for the future care payments from the date of the *Lee* trial (2010) to present. This decision is supported by the Texas Periodic Payment statute, because it provides the District Court discretion to award the damages "in whole *or* in part" in periodic payments. *Id.* § 74.503(a) (emphasis added).

To calculate future care payments from the date of trial to present, the Court should rely on Plaintiff's Life Care Plan, Trial Exhibit 19. During oral argument at the Fifth Circuit, Defendant United States relied on Plaintiffs' Life Care Plan, Trial Exhibit 19, as the road map for how C.L.'s future periodic payments should be allocated. Oral Argument Audio, No. 13-50905 (Aug 5, 2013) ("We know on this record what such an order would look like . . . District Court relied on and accepted fully, Exhibit 19"). This

Document is attached as **Exhibit E** to this motion. Attached to the Reversionary Trust, **Exhibit D**, "Schedule B" calculates the inflationary value of those sums over time based on Exhibit E and the Testimony of Dr. Thomas Mayor. *See* Exhibit E, Motion to Create Reversionary Trust, at 20. Based on Schedule B, the one-time payment representing the first four years since trial is **$333,195.**

Additionally, the Life Care Plan contemplated that by age 27 C.L. would need his second kidney transplant (his first occurring on September 29, 2005, at the age of 2). Exhibit 1, at 3. The costs surrounding this transplant were $431,012.21. *Id.* Since trial, C.L. had his second transplant—17 year earlier than allocated for in the life-care plan. On June 7, 2013, C.L. received his second kidney transplant at 10 years of age. Therefore, the Court should include in the initial payment from the reversionary trust **$431,012.21** to represent the value of the kidney transplant.

Thus, the total value of the initial payment on the date of judgment from the reversionary trust to the special needs trust is:

| | | |
|---|---:|---|
| $ | 250,000 | non-economic |
| $ | 764,207.21 | net of the future care payments from date of trial |
| **$** | **1,014,201.21** | **First Payment from Reversionary Trust** |

## V.    **Subsequent Periodic Payments from the Reversionary Trust**

The remainder of the funds should be paid periodically from the reversionary trust starting on the date of judgment. These periodic payments from the reversionary trust should be paid directly into the special needs trust. Plaintiffs have attached as **Exhibit D**, at page 20, a schedule of periodic payments over the course of C.L.'s life pursuant to the life care plan established at trial. This schedule reflects the value of the costs at the time the periodic payment is paid, based on Dr. Mayor's testimony. This method is identical to

the judgment fashioned by the *Cibula* trial court, and agreed to by the same Defendant here.

The *Cibula* district court created a reversionary trust which could be invested so the corpus would grow, but would pay out an exact sum periodically for the life of the plaintiff or until the corpus is depleted, whichever occurred first. **Exhibit A**, *Cibula* order, No. 1:05-cv-1386, at 3 (E.D. Va. Jun. 19, 2012) (Document #121). Should C.L.'s death occur first, the remaining funds in the reversionary trust should revert to the United States Treasury.

**CONCLUSION**

Plaintiff asks this Court to create a special needs trust for the benefit of the minor C.L. Plaintiff also asks this court to create a reversionary trust with a reverter interest in favor of the Government to effectuate this Fifth Circuit's opinion. After deducting for the attorneys fees and costs (**$1,751,889.35**), the Court should deposit the remainder of the judgment into the reversionary trust (**$3,386,862.65)**. The first payment from the reversionary trust should be made to the special needs trust on the date of judgment in the amount of $**1,014,201.21**. Afterwards, the reversionary trust should pay out monthly into the special needs trust according to the attached schedule B of **Exhibit D**, until C.L. dies or the corpus of the reversionary trust depletes, whichever should occur first. Should C.L. die first, any remaining funds in the reversionary trust should revert to the United States Treasury.

Finally, Plaintiffs request the Court to set this motion for expedited hearing for January 2015. Plaintiffs request expedited relief for the following reasons:

- The Fifth Circuit mandate issued on September 19, 2014;

- This Court issued its order to enforce the mandate September 22, 2014;

- On September 22, 2014, Plaintiff's sent Defendant a proposed joint motion to effectuate the circuit court mandate—substantially similar to what Plaintiffs filed today;

- On October 29, 2014, after receiving no response from Defendant, Plaintiffs re-sent the proposed joint motion to Defendant;

- On November 4, 2014, Plaintiffs' sent Defendant an amended proposed joint motion to enforce the mandate;

- On November 9, 2014, Plaintiffs' sent Defendant a third amended proposed joint motion to enforce the mandate;

- Plaintiff did not receive a response until December 9, 2014, when Defendant sent Plaintiff a one-page proposed payment schedule.

Due to the delay and difficulty in resolving this matter since the circuit court mandate, Plaintiffs ask this Court to expedite resolution of this case.

Respectfully Submitted,

/s/ Jamal K. Alsaffar
JAMAL K. ALSAFFAR
Texas State Bar Number:  24027193
TOM JACOB
Texas State Bar Number: 24069981
For ARCHULETA, ALSAFFAR & HIGGINBOTHAM
P.O. Box 340639
Austin, Texas 78734
Telephone: 512-266-7676
Fax: 512-266-4646

Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

By my signature above, I certify that a copy of this motion has been sent to the

following on December 23, 2014 via the Court's CM/ECF notice system:

Jim Gilligan
United States Attorney
Western District of Texas
601 N.W. Lop 410
Suite 600
San Antonio, Texas 28216
Email: jim.gilligan@usdoj.gov
Telephone: (210) 384-7345
Facsimile: (210) 384-7312

Katherine E. Beaumont
United States Attorney's Office
601 NW Loop 410
Suite 600
San Antonio, TX 78216